# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

| | |
|---|---|
| GRACE FLANNERY, on behalf of herself and all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>SPIRIT AIRLINES, INC.,<br><br>   Defendants. | CASE NO.: _____<br><br><br><br><br><br><br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff, Grace Flannery ("Plaintiff" or "Flannery") brings this action against Defendant, Spirit Airlines, Inc. ("Defendant" or "Spirit"), on behalf of herself and those similarly situated ("Class" as defined below), and alleges as follows:

## NATURE OF THE ACTION

1. Spirit, a major commercial airline, instituted policies that facially violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* and effectively interfered with, restrained, or denied the exercise of or the attempt to exercise FMLA benefits by flight attendants ("FAs"). Moreover, when Plaintiff opposed Spirit's unlawful policies and practices, it retaliated against and eventually terminated her.

2. Accordingly, Plaintiff brings this class action seeking damages and declaratory relief on behalf of herself and all other similarly situated Spirit FAs. Plaintiff also brings individual claims to redress her own wrongful termination.

1

## PARTIES

3. Plaintiff is an adult woman, a U.S. citizen, and a resident of the State of California.

4. Defendant is a Delaware corporation with its principal place of business in Miramar, Broward County, Florida.

5. Defendant is a major commercial airline and purports to serve "more than 90 destinations across the U.S., Latin America and the Caribbean." *See* https://www.spirit.com/about-us.

6. Defendant employs more than 50 people for each working day during each of 20 or more calendar workweeks during the applicable time period, is engaged in commerce or in an industry or activity affecting commerce, and thus, is an employer as defined under the FMLA. 29 C.F.R. § 825.104.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff brings this class action based on federal questions under the FMLA, 29 U.S.C. § 2601, *et seq*.

8. Venue is proper in this District under 28 U.S.C. § 1391 because Spirit resides, transacts business, or has offices in this District, and some of the acts and omissions alleged herein also took place in this District.

## SUBSTANTIVE ALLEGATIONS

**A. Spirit's Leave Policies Were Facially Inconsistent with the FMLA**

9. At all relevant times herein, Spirit implemented and enforced certain family and medical leave policies that were facially inconsistent with the FMLA.

### i. Spirit's FMLA Eligibility Policy Required FAs to Maintain a Higher Number of Hours and Excluded Certain Hours Worked

10. The FMLA entitles eligible employees of covered employers like Spirit to take unpaid job-protected leave for specified family and medical reasons.

11. Among other things, FAs must meet the FMLA's "hours of service requirement" to be entitled to FMLA leave. 29 C.F.R. § 825.801.

12. Specifically, under the FMLA, a FA will meet the "hours of service requirement," if during the previous twelve (12) months, he or she has:

   a. Worked or been paid for not less than 60 percent of the employee's applicable monthly guarantee; and

   b. Worked or been paid for not less than 504 hours. *Id.*

13. The hours an employee has "worked" during the previous 12 months is the employee's "duty hours" during that time.

14. Contrary to "flight" or "block" hours, "duty hours encompass time spent performing a variety of support duties that begin before a plane takes flight and end after it lands." *See* FMLA FAQ https://www.dol.gov/agencies/whd/fmla/faq.

15. Spirit has a consistent policy and/or practice of requiring Plaintiff and the Class members to report to the airport or designated location sixty (60) minutes prior to scheduled departure if the flight was departing from the FA's home base, or fifty (50) minutes prior to scheduled departure if the flight was departing outside of the FA's home base. During this time, Plaintiff and the Class members were required to attend pre-flight briefings and remain on board to greet and assist passengers during the entire boarding process.

16. Spirit also has a consistent policy and/or practice of requiring Plaintiff and the Class members to stay on board for at least thirty (30) minutes

after the aircraft is secured at the unloading point to assist passengers during the entire deplaning process.

17. This pre- and post- flight time is considered "duty hours" because it is time spent performing support duties that begin before an aircraft takes flight and after it lands.

18. However, Spirit's FMLA policy, expressly laid out in the 2016-2021 Agreement Between Spirit Airlines and the Association of Flight Attendants ("AFA") ("CBA"), provides, in pertinent that:

> 1. A Flight Attendant who has completed twelve (12) months of service with the Company, and who has maintained a minimum of **520 credit hours** during the previous twelve (12) months, may take up to:
>
>> a. One (1) year of continuous unpaid leave for the birth or adoption of a child;
>> b. One (1) year of unpaid leave for care of a spouse, child or parent with a serious health condition; and
>> c. One (1) year of continuous unpaid leave for care of the Flight Attendant's own serious medical condition.

19. Accordingly, Spirit has a consistent policy and/or practice of requiring FAs to maintain a ***higher*** number of hours (520 and not 504 hours) than required under the law to qualify for FMLA.

20. Even worse, the "credit hours" Spirit uses to calculate the "hours of service requirement," which establishes FMLA eligibility *only* include block-to block time and not "duty hours" as required under the FMLA.

21. Block-to-block time is the period of time beginning when an aircraft first moves for the purpose of a flight or is moved from the ramp blocks and ends when the aircraft is next secured with blocks at a ramp or unloading point.

4

22. Because Spirit applies the block-to-block time rather than "duty hours," Spirit fails to take into account the time the FAs are working pre- and post- flight – which is at a minimum eighty (80) to ninety (90) minutes of time per flight – when calculating an FA's FMLA eligibility.

23. As a result, this policy effectively interferes with, restrains, or denies the exercise of or the attempt to exercise the FMLA benefits by Plaintiff and the Class.

### ii. Other Discrepancies in Spirit's Policies

24. Spirit's other policies were also not compliant with the FMLA.

25. First, Spirit's policy provided that eligible FAs can take up to twelve (12) workweeks of FMLA leave in a twelve (12) month period, when the FMLA provides that eligible FAs are entitled to seventy-two (72) days of FMLA leave during any 12-month period.

26. Second, Spirit's policy stated that eligible FAs can take up to twenty-six (26) workweeks of FMLA leave in a single twelve (12) month period to care for a covered service member with serious injury, when the FMLA provides that eligible FAs are entitled to one hundred and fifty-six (156) days to care for a covered service member with serious injury during a single twelve (12) month period.

27. Third, Spirit's policy required eligible FAs to report leave under the FMLA no later than "3 business days from the start of the leave," when the FMLA provides that eligible FAs report within "3 days or *as soon as practicable*."

28. As a result, these policies effectively interfere with, restrain, or deny the exercise of or the attempt to exercise the FMLA benefits by Plaintiff and the Class.

## PLAINTIFF'S EXPERIENCE

### A.   Plaintiff's Employment with Spirit

29.   Plaintiff was employed by Defendant as a flight attendant on or around March 27, 2014, until she was terminated on or around November 17, 2021.

30.   A FA's base airport is known as the "domicile" or "home base." Plaintiff's "home base" was initially Chicago, Illinois, but then she was transferred to Las Vegas, Nevada, and then to Orlando, Florida.

### B.   Spirit Improperly Denies FMLA Leave of Plaintiff

31.   On or about August 28, 2019, Plaintiff contacted Spirit's third-party FMLA administrator, Unum, and requested intermittent FMLA leave for a one-year period pursuant to her doctor's suggestion and physical therapy needs.

32.   At all times herein mentioned, Unum was the agent or employee of Spirit and was acting within the course and scope of such agency or employment.

33.   Plaintiff was eligible for FMLA because she worked for a FMLA covered employer and met the "hours of service" requirement.

34.   While Unum promised to fax the required FMLA forms, it failed to do so, and Unum also failed to open a leave request at that time through its online system.  Neither Unum nor Spirit provided a determination as to Plaintiff's FMLA request within 5 business days as required under the FMLA. 29 CFR § 825.300(b)(1).

35.   On or about September 3 - 25, 2019, Plaintiff again contacted Unum and Spirit and provided them with further details of her intermittent FMLA request and potential short-term disability or potential need for time off after a potential surgery, along with medical records.  Plaintiff was told she was permitted to take sick leave, but not leave under the FMLA.

36.   In or around late September 2019, Plaintiff had a shoulder scope.

37. During this time, Plaintiff was forced to dropped some of her trips to avoid discipline points as she waited for the decision regarding her FMLA leave request.

38. On or about October 4, 2019, Plaintiff worked a mandatory training.

39. After the October training, Plaintiff was denied FMLA leave and threatened with discipline points for certain absences in November 2019, which should have been covered under the FMLA. As a result, Plaintiff complained to Unum's management.

40. On or about December 23, 2019, without a doctor's request or authorization, Spirit unilaterally determined Plaintiff was disabled and suspended her due to the disability. At that time, Spirit continued to deny Plaintiff's FMLA leave request.

41. On or about December 28, 2019, Plaintiff escalated her complaints to Spirit's Human Resources manager, Daniel Paponetti ("Paponetti") stating that Spirit and Unum had failed to process her FMLA request. While Paponetti told Plaintiff he would call her back, he never did.

42. On or around January 16, 2020, Plaintiff's doctor released Flannery back to work with a note that Plaintiff use her other arm when possible. Spirit Manager, Craig Scott then emailed Plaintiff stating: "We have received your Return to Work and filed it in your profile. A notice will be sent out to release you to return to work effective on January 22, 2020, without restrictions."

43. A few days later, Spirit rejected the form and failed to reinstate her to work. Spirit said that in order for Plaintiff to get reinstated, she must provide a note that indicates no restriction.

### C. Plaintiff Files and the DOL Determines Spirit Violated the FMLA

44. On or about January 23, 2020, Flannery contacted the Department of Labor ("DOL") and requested that the DOL investigate potential FMLA violations by Spirit for denying her FMLA request.

45. On or about February 20, 2020, Plaintiff was terminated by Spirit and denied COBRA benefits during the DOL investigation.

46. In or around May 2020, the DOL issued a report finding, *inter alia* that: (1) Spirit failed to offer leave under the FMLA when it became aware that Plaintiff might have an FMLA qualifying condition; (2) Spirit failed to timely and properly provide eligibility notice, notice of rights and responsibilities and designation notice under the FMLA; and (3) Spirit failed to properly reinstate her.

47. The DOL also found that Spirit was in violation of interfering with Plaintiff's FMLA rights and stated that the "violations appear to be willful."

48. Finally, the DOL also noted several of Spirit's FMLA policies "were not in compliance with DOL standards."

49. DOL required Spirit to reinstate Plaintiff to the same position with health benefits on or about May 4, 2020. Spirit did not pay Plaintiff any back wages from January through May 2020 and did not pay Plaintiff her out of pocket medical costs.

50. On May 8, 2020, Plaintiff filed a grievance with the AFA identifying several FMLA violations, and stating, *inter alia*, Spirit's policy requiring FAs to maintain 520 credit hours (and not 504 duty hours) to be eligible for FMLA was unlawful.

51. Thereafter, Plaintiff bid for and was granted Voluntary Time Off (during times of decreased travel over the Covid-19 Pandemic) from September 2020 through the end of April 2021.

**D. Spirit Continues to Retaliate Against Plaintiff for Making Complaints about Spirit's FMLA Non-Compliance and Eventually Terminates Her**

52. To return to active service, Plaintiff was required to attend a Recurrent FA Training, which was scheduled on April 22, 2021.

53. On or about March 4, 2021, Plaintiff emailed Spirit expressing that she had recently completed a medical treatment and needed information about "Return to work form/Fit for duty/CVTO/Medical LOA," but she received no response. The request was specifically in preparation for her April 2021 Recurrent Training.

54. On April 19, 2021, Plaintiff again contacted Spirit asking to reschedule her recurrent training, but Spirit denied her request. As a result, Plaintiff was forced to attend the April 22, 2021 training.

55. During the training, Plaintiff was informed that she failed the training and was suspended. No supporting paperwork was provided. When she pressed for more information, she was told that she was on "de-qualified, inactive, unpaid status," and could not work or use her travel privileges at that time. As a result, she was forced to pay out of pocket to fly back home from training.

56. On or around April 23, 2021, Plaintiff emailed her manager and reported the situation.

57. On or around April 27, 2021, she attended Recurrent Training again and was sent home immediately without any valid reason being given. Later that night, she found out that they had noted that her skirt was too short, and her

9

shoes were not compliant based on the new shoe policy. Plaintiff immediately called the Ethics Hotline and reported the training incidents but received no response.

58. On or around April 28, 2021, Plaintiff called out sick and disclosed of her FMLA qualifying reason given the new shoe policy. She thereafter spoke with Inflight Training Director who confirmed her suspension, that her benefits were being cancelled, and her vacation time was being taken away.

59. Plaintiff's scheduled shift on April 28, 2021, was removed by Defendant so Plaintiff could not create a FMLA request through its third-party administrator, Sedgwick, to initiate FMLA leave for her protected absence.

60. On or around May 4, 2021, Plaintiff requested a base transfer to accommodate her medical treatments.

61. In or about July 2021, Spirit scheduled the cancellation of Plaintiff's health benefits and Plaintiff's August 10, 2021, surgery pre-authorization was denied for bilateral feet surgery.

62. On or about July 29, 2021, Plaintiff attended Recurrent Training again and made a request for reasonable accommodations, submitting a note from a doctor which disclosed that Plaintiff was having surgery on August 10, 2021, and that she needed an exemption to the new shoe policy.

63. Despite passing the training, Plaintiff was not allowed to work until after her scheduled surgery.

64. On or about August 12, 2021, Plaintiff bid for a September 2021 schedule. However, when she attempted to do so, she was locked out of the system for August and only allowed to bid a schedule for September.

65. To Plaintiff's surprise, on or about October 29, 2021, she was required to attend an investigation meeting with management related to an alleged incident that occurred on or around August 11, 2021.

66. At the meeting on or about October 29, 2021, Spirit contended that its scheduling department attempted to contact Plaintiff repeatedly (albeit on her scheduled days off), to assign duty from August 11, 2021 – the day after her scheduled surgery – through August 30, 2021. Spirit claimed each of these failures to return calls from scheduling by Plaintiff were considered unexcused absences and was a terminable offense.

67. On or about November 17, 2021, Spirit informed Plaintiff she was terminated, and her health benefits would be terminated immediately.

## CLASS ACTION ALLEGATIONS

68. Plaintiff brings this lawsuit, both on behalf of herself and on behalf of a nationwide class ("Class") as defined below, pursuant to Federal Rules of Civil Procedure 23(a), as well as subsections (b)(3) and/or (c)(4):

> All current and former flight attendants who were employed by Spirit and based in the United States, at any time during the period from three years prior to the filing of the original complaint in this action through the date of final judgment.

69. Excluded from the Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

70. **Ascertainability and Numerosity:** the potential members of the Class as defined herein are so numerous that joinder would be impracticable. Plaintiff is informed and believes, and thereon alleges, that the Class is comprised of hundreds, if not thousands, of person and is so numerous that joinder of all members is impracticable. The exact size of the Class and the identity of the members of the Class are ascertainable from the business records maintained by Defendant. The Class may be notified of the pendency of this action by mail, or

other appropriate media, using the notice similar to that which is customarily used in wage and hour class actions.

71. **Commonality:** There is a well-defined community of interest and common questions of law and fact that predominate over any question affecting only individual members of the Class. These common legal and factual questions, which do not vary from members of the Class, and which may be determined without reference to the individual circumstances of any members of the Class, include, but are not limited, to the following:

    a. Whether Spirit's policy regarding having FAs to maintain 520 credit hours to be eligible for FMLA was a violation of the FMLA;
    b. Whether Spirit's policy which provided that eligible FAs can take up to twelve (12) workweeks of FMLA leave in a twelve (12) month period violated the FMLA;
    c. Whether Spirit's policies violate FMLA's requirements that employers provide intermittent leave;
    d. Whether Spirit's policy which stated that eligible FAs can take up to twenty-six (26) workweeks of FMLA leave in a single twelve (12) month period to care for a covered service member with serious injury; and
    e. Whether Spirit's policy which required eligible FAs to report leave under the FMLA no later than "3 business days from the start of the leave violated the FMLA."

72. **Typicality:** Plaintiff's claims are typical of the claims of Class members as all Class members are similarly affected by Defendant's wrongful conduct in violation of federal law that are complained of herein. The claims arise from the same course of conduct, and the relief sought is common.

73. **Adequacy of Representation:** Plaintiff is a member of the Class and will fairly and adequately protect the interests of Class members because: (1) her interests do not conflict with the interest of the individual members of the Class she seeks to represent; (2) she has retained counsel competence and experienced in employment class action litigation; and (3) she intends to prosecute this action vigorously.

74. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for members of the Class to prosecute their claims individually. The litigation and trial of the Class-wide claims are manageable. Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each Class member has suffered injury and is entitled to recover by reason of Defendant's unlawful conduct. Common proof as to Defendant's conduct, including Defendant's own documents will be available to demonstrate the uniformity of Defendant's conduct.

## COUNT I
### Interference in Violation of the FMLA
### (Individually and on Behalf of the Class)

75. Plaintiff repeats and realleges the allegations in paragraphs 1 through 74 above as though fully set forth herein.

76. The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C.A. § 2615.

77. At all relevant times herein, Plaintiff and the members of the Class were employed by Spirit, a FMLA covered employer.

78. At all relevant times herein, Plaintiff and the members of the Class were entitled to protections afforded under the FMLA.

79. As described above, Spirit has committed violations of the FMLA against Plaintiff and the Class members by, *inter alia*, interfering with, retraining, and/or denying the exercise of or the attempt of exercise of lawful use of FMLA benefits.

80. Plaintiff and the Class members had and have a right to be free of policies that interfere with, restrain, or deny the exercise of or the attempt to exercise lawful use of FMLA benefits.

81. As a direct and proximate cause of Spirit's FMLA violations, Plaintiff and the Class suffered and continue to suffer damages, and seek, *inter alia*: back pay, front pay, compensatory damages, special damages, general damages, attorney's fees and costs.

82. Spirit's unlawful conduct in violation of the FMLA was intentional and/or was not carried out in good faith, and therefore, Plaintiff and the Class members are entitled to an award of liquidated damages.

## COUNT II
### Retaliation in Violation of the FMLA
### (Individually)

83. Plaintiff repeats and realleges the allegations in paragraphs 1 through 67 as though fully set forth herein.

84. The FMLA provides that "[i]t shall be unlawful for any employer to . . . discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C.A. § 2615.

85. The FMLA provides that "[i]t shall be unlawful for any employer to discharge . . . any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C.A. § 2615.

86. At all relevant times herein, Plaintiff was employed by Spirit, an FMLA covered employer.

87. At all relevant time herein, Plaintiff was entitled to protections afforded under the FMLA.

88. As described above, Spirit has committed violations of the FMLA against Plaintiff by, *inter alia*, retaliating against and eventually terminating Plaintiff for asserting her rights protected by the FMLA.

89. As a direct and proximate cause of Spirit's FMLA violation, Plaintiff suffered and continue to suffer damages, and seek, *inter alia*: back pay, front pay, compensatory damages, special damages, general damages, attorney's fees and costs.

90. Spirit's unlawful conduct in violation of the FMLA was intentional and/or was not carried out in good faith, and therefore, Plaintiff is entitled to an award of liquidated damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief on behalf of herself and the Class against Defendant:

1. Certification of this action as a class action and appointment of Plaintiff and Plaintiff's counsel to represent the Class;

2. Provision of the class notice to members of the Class as defined above;

3. A declaratory judgment that Defendant knowingly and intentionally violated the certain provisions of the FMLA;

4.  Compensatory damages according to proof;

5.  Statutory damages, liquidated damages, and penalties according to proof;

6.  Pre-judgment interest on all sums collected;

7.  Reasonable attorneys' fees and costs pursuant to applicable law;

8.  Costs of suit herein; and

9.  For such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 2, 2022          MILLER SHAH LLP

/s/ *Nathan C. Zipperian*
Nathan C. Zipperian
1625 N. Commerce Pkwy, Ste. 320
Fort Lauderdale, FL 33326
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: nczipperian@millershah.com

Chiharu G. Sekino (*Pro Hac Vice* to be Submitted)
MILLER SHAH LLP
1230 Columbia Street, Suite 1140
San Diego, CA 92101
Tel: (866) 540-5505
Fax: (866) 300-7367
Email: cgsekino@millershah.com

Monique Olivier (*Pro Hac Vice* to be Submitted)
OLIVIER & SCHREIBER LLP
475 14th Street, Suite 250
Oakland, CA 94612
Tel: (415) 484-0980
Fax: (415) 658-7758

Email: monique@os-legal.com

*Attorneys for Plaintiff and the Proposed Class*